PER CURIAM.
Based upon recommendations from The Florida Bar’s Special Commission on Insurance Practices II, The Florida Bar petitions this Court to consider amendments to the Rules Regulating the Florida Bar. Specifically, the Bar has proposed amending rule 4-1.7 (Conflict of Interest; General Rule) and rule 4-7.10 (Firm Names and Letterhead). We have jurisdiction. See art. V, § 15, Fla. Const. Notice of the proposed amendments was published in The Florida Bar News, and no adverse comments were filed with this Court. We' approve the petition and adopt the proposed amendments as reflected in the appendix to this opinion. The proposed amendments shall become effective as of July 1, 2003.
We have determined the effective date with the intent that lawyers will have time in which to be in compliance by that date. We direct the Bar to publish in The Florida Bar News that these amendments have been adopted and that lawyers are to be in compliance on the effective date. The Bar has advised that it will assist lawyers with issues of compliance, which we expect and urge lawyers to use. Furthermore, the Bar is to implement continuing legal education programs to educate lawyers about their responsibilities under these new rules and to cover issues in respect to compliance.
It is so ordered.
ANSTEAD, C.J., WELLS, PARIENTE, LEWIS, QUINCE, and CANTERO, JJ„ and SHAW, Senior Justice, concur.
APPENDIX
RULE 4-1.7 CONFLICT OF INTEREST; GENERAL RULE
(a) Representing Adverse Interests. A lawyer shall not represent a client if the representation of that client will be directly adverse to the interests of another client, unless:
(1) the lawyer reasonably believes the representation will not adversely affect the lawyer’s responsibilities to and relationship with the other client; and
(2) each client consents after consultation.
(b) Duty to Avoid Limitation on Independent Professional Judgment. A lawyer shall not represent a client if the lawyer’s exercise of independent professional judgment in the representation of that client may be materially limited by the lawyer’s responsibilities to another client or to a third person or by the lawyer’s own interest, unless:
(1) the lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents after consultation.
(c) Explanation to Clients. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.
(d) Lawyers Related by Blood or Marriage. A lawyer related to another lawyer as parent, child, sibling, or spouse shall not represent a client in a representation directly adverse to a person who the lawyer knows is represented by the other lawyer except upon consent by the client after consultation regarding the relationship.
(e) Representation of insureds. Upon undertaking the representation of an in *1142 sured client at the expense of the insurer, a lawyer has a duty to ascertain whether the lawyer will be representing both the insurer and the insured as clients, or only the insured, and to inform both the insured and the insurer regarding the scope of the representation. All other Rules Regulating The Florida Bar related to conflicts of interest apply to the representation as they would in any other situation.
Comment
Loyalty to a client
Loyalty is an essential element in the lawyer’s relationship to a client. An impermissible conflict of interest may exist before representation is undertaken, in which event the representation should be declined. If such a conflict arises after representation has been undertaken, the lawyer should withdraw from the representation. See rule 4-1.16. Where more than 1 client is involved and the lawyer withdraws because a conflict arises after representation, whether the lawyer may continue to represent any of the clients is determined by rule 4-1.9. See also rule 4-2.2(c). As to whether a client-lawyer relationship exists or, having once been established, is continuing, see comment to rule 4-1.3 and scope.
As a general proposition, loyalty to a chent prohibits undertaking representation directly adverse to that client’s or another client’s interests without the affected client’s consent. Subdivision (a) expresses that general rule. Thus, a lawyer ordinarily may not act as advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated. On the other hand, simultaneous representation in unrelated matters of clients whose interests are only generally adverse, such as competing economic enterprises, does not require consent of the respective clients. Subdivision (a) applies only when the representation of 1 client would be directly adverse to the other and where the lawyer’s responsibilities of loyalty and confidentiality of the other chent might be compromised.
Loyalty to a chent is also impaired when a lawyer cannot consider, recommend, or carry out an appropriate course of action for the chent because of the lawyer’s other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the chent. Subdivision (b) addresses such situations. A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer’s independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the chent. Consideration should be given to whether the chent wishes to accommodate the other interest involved.
Consultation and consent
A chent may consent to representation notwithstanding a conflict. However, as indicated in subdivision (a)(1) with respect to representation directly adverse to a chent and subdivision (b)(1) with respect to material limitations on representation of a chent, when a disinterested lawyer would conclude that the chent should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client’s consent. When more than 1 chent is involved, the question of conflict must be resolved as to each chent. Moreover, there may be circumstances where it is impossible to make the disclosure necessary to obtain consent. For example, when the lawyer represents different clients in related matters and 1 of the *1143 clients refuses to consent to the disclosure necessary to permit the other client to make an informed decision, the lawyer cannot properly ask the latter to consent.
Lawyer’s interests
The lawyer’s own interests should not be permitted to have adverse effect on representation of a client. For example, a lawyer’s need for income should not lead the lawyer to undertake matters that cannot be handled competently and at a reasonable fee. See rules 4-1.1 and 4-1.5. If the probity of a lawyer’s own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice. A lawyer may not allow related business interests to affect representation, for example, by referring clients to an enterprise in which the lawyer has an undisclosed interest.
Conflicts in litigation
Subdivision (a) prohibits representation of opposing parties in litigation. Simultaneous representation of parties whose interests in litigation may conflict, such as co-plaintiffs or co-defendants, is governed by subdivisions (b) and (c). An impermissible conflict may exist by reason of substantial discrepancy in the parties’ testimony, incompatibility in positions in relation to an opposing party, or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question. Such conflicts can arise in criminal cases as well as civil. The potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than 1 co-defendant. On the other hand, common representation of persons having similar interests is proper if the risk of adverse effect is minimal and the requirements of subdivision (b) are met. Compare rule 4-2.2 involving in-termediation between clients.
Ordinarily, a lawyer may not act as advocate against a client the lawyer represents in some other matter, even if the other matter is wholly unrelated. However, there are circumstances in which a lawyer may act as advocate against a client. For example, a lawyer representing an enterprise with diverse operations may accept employment as an advocate against the enterprise in an unrelated matter if doing so will not adversely affect the lawyer’s relationship with the enterprise or conduct of the suit and if both clients consent upon consultation. By the same token, government lawyers in some circumstances may represent government employees in proceedings in which a government agency is the opposing party. The propriety of concurrent representation can depend on the nature of the litigation. For example, a suit charging fraud entails conflict to a degree not involved in a suit for a declaratory judgment concerning statutory interpretation.
A lawyer may represent parties having antagonistic positions on a legal question that has arisen in different cases, unless representation of either client would be adversely affected. Thus, it is ordinarily not improper to assert such positions in cases pending in different trial courts, but it may be improper to do so in cases pending at the same time in an appellate court.
Interest of person paying for a lawyer’s service
A lawyer may be paid from a source other than the client, if the client is informed of that fact and consents and the arrangement does not compromise the lawyer’s duty of loyalty to the client. See rule 4-1.8(f). For example, when an insurer and its insured have conflicting interests in a matter arising from a liability insurance agreement and the insurer is required to provide special counsel for the *1144 insured, the arrangement should assure the special counsel’s professional independence. So also, when a corporation and its directors or employees are involved in a controversy in which they have conflicting interests, the corporation may provide funds for separate legal representation of the directors or employees, if the clients consent after consultation and the arrangement ensures the lawyer’s professional independence.
Other conflict situations
Conflicts of interest in contexts other than litigation sometimes may be difficult to assess. Relevant factors in determining whether there is potential for adverse effect include the duration and intimacy of the lawyer’s relationship with the client or clients involved, the functions being performed by the lawyer, the likelihood that actual conflict will arise, and the likely prejudice to the client from the conflict if it does arise. The question is often one of proximity and degree.
For example, a lawyer may not represent multiple parties to a negotiation whose interests are fundamentally antagonistic to each other, but common representation is permissible where the clients are generally aligned in interest even though there is some difference of interest among them.
Conflict questions may also arise in estate planning and estate administration. A lawyer may be called upon to prepare wills for several family members, such as husband and wife, and, depending upon the circumstances, a conflict of interest may arise. In estate administration the identity of the client may be unclear under the law of some jurisdictions. In Florida, the personal representative is the client rather than the estate or the beneficiaries. The lawyer should make clear the relationship to the parties involved.
A lawyer for a corporation or other organization who is also a member of its board of directors should determine whether the responsibilities of the 2 roles may conflict. The lawyer may be called on to advise the corporation in matters involving actions of the directors. Consideration should be given to the frequency with which such situations may arise, the potential intensity of the conflict, the effect of the lawyer’s resignation from the board, and the possibility of the corporation’s obtaining legal advice from another lawyer in such situations. If there is material risk that the dual role will compromise the lawyer’s independence of professional judgment, the lawyer should not serve as a director.
Conflict charged by an opposing party
Resolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation. In litigation, a court may raise the question when there is reason to infer that the lawyer has neglected the responsibility. In a criminal case, inquiry by the court is generally required when a lawyer represents multiple defendants. Where the conflict is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question. Such an objection should be viewed with caution, however, for it can be misused as a technique of harassment. See scope.
Family relationships between lawyers
Rule 4-1.7(d) applies to related lawyers who are in different firms. Related lawyers in the same firm are also governed by rules 4-1.9 and 4-1.10. The disqualification stated in rule 4-1.7(d) is personal and is not imputed to members of firms with whom the lawyers are associated.
*1145 Representation of Insureds
The unique tripartite relationship of insured, insurer, and lawyer can lead to ambiguity as to whom a lawyer represents. In a particular case, the lawyer may represent only the insured, with the insurer having the status of a non-elient third party payor of the lawyer’s fees. Alternatively, the lawyer may represent both as dual clients, in the absence of a disqualifying conflict of interest, upon compliance with applicable rules. Establishing clarity as to the role of the lawyer at the inception of the representation avoids misunderstanding that may ethically compromise the lawyer. This is a general duty of every lawyer undertaking representation of a client, which is made specific in this context due to the desire to minimize confusion and inconsistent expectations that may arise.
RULE 4-7.10 FIRM NAMES AND LETTERHEAD
(a) False, Misleading, or Deceptive. A lawyer shall not use a firm name, letterhead, or other professional designation that violates subdivision (b)(1) of rule 4-7.2.
(b) Trade Names. A lawyer may practice under a trade name if the name is not deceptive and does not imply a connection with a government agency or with a public or charitable legal services organization, does not imply that the firm is something other than a private law firm, and is not otherwise in violation of subdivision (b)(1) of rule 4-7.2. A lawyer in private, practice may use the term “legal clinic” or “legal services” in conjunction with the lawyer’s own name if the lawyer’s practice is devoted to providing routine legal services for fees that are lower than the prevailing rate in the community for those services.
(c) Advertising Under Trade Name. A lawyer shall not advertise under a trade or fictitious name, except that a lawyer who actually practices under a trade name as authorized by subdivision (b) may use that name in advertisements. A lawyer who advertises under a trade or fictitious name shall be in violation of this rule unless the same name is the law firm name that appears on the lawyer’s letterhead, business cards, office sign, and fee contracts, and appears with the lawyer’s signature on pleadings and other legal documents.
(d) Law Firm with Offices in More Than 1 Jurisdiction. A law firm with offices in more than 1 jurisdiction may use the same name in each jurisdiction, but identification of the lawyers in an office of the firm shall indicate the jurisdictional limitations on those not licensed to practice in the jurisdiction where the office is located.
(e) Name of Public Officer in Firm Name. The name of a lawyer holding a public office shall not be used in the name of a law firm, or in communications on its behalf, during any substantial period in which the lawyer is not actively and regularly practicing with the firm.
(f) Partnerships and Authorized Business Entities. Lawyers may state or imply that they practice in a partnership or authorized business entity only when that is the fact.
(g) Insurance Staff Attorneys. Where otherwise consistent with these rules, lawyers who practice law as employees within a separate unit of a liability insurer representing others pursuant to policies of liability insurance may practice under a name that does not constitute a material misrepresentation. In order for the use of a name other than the name of the insurer not to constitute a material misrepresentation, all lawyers in the unit must comply with all of the following:
*1146 (1) the firm name must include the name of a lawyer who has supervisory responsibility for all lawyers in the unit;
(2) the office entry signs, letterhead, business cards, websites, announcements, advertising, and listings or entries in a law list or bar publication bearing the name must disclose that the lawyers in the unit are employees of the insurer;
(3) the name of the insurer and the employment relationship must be disclosed to all insured clients and prospective clients of the lawyers, and must be disclosed in the official file at the lawyers’ first appearance in the tribunal in which the lawyers appear under such name;
(4) the offices, personnel, and records of the unit must be functionally and physically separate from other operations of the insurer to the extent that would be required by these rules if the lawyers were private practitioners sharing space with the insurer; and
(5) additional disclosure should occur whenever the lawyer knows or reasonably should know that the lawyer’s role is misunderstood by the insured client or prospective clients.
Comment
A firm may be designated by the names of all or some of its members, by the names of deceased members where there has been a continuing succession in the firm’s identity, or by a trade name such as “Family Legal Clinic.” Although the United States Supreme Court has held that legislation may prohibit the use of trade names in professional practice, use of such names in law practice is acceptable so long as it is not misleading. If a private firm uses a trade name that includes a geographical name such as “Springfield Legal Clinic,” an express disclaimer that it is not a public legal aid agency may be required to avoid a misleading implication. It may be observed that any firm name including the name of a deceased partner is, strictly speaking, a trade name. The use of such names to designate law firms has proven a useful means of identification. However, it is misleading to use the name of a lawyer not associated with the firm or a predecessor of the firm.
Subdivision (a) precludes use in a law firm name of terms that imply that the firm is something other than a private law firm. Two examples of such terms are “academy” and “institute.” Subdivision (b) precludes use of a trade or fictitious name suggesting that the firm is named for a person when in fact such a person does not exist or is not associated with the firm. An example of such an improper name is “A. Aaron Able.” Although not prohibited per se, the terms “legal clinic” and “legal services” would be misleading if used by a law firm that did not devote its practice to providing routine legal services at prices below those prevailing in the community for like services.
Subdivision (c) of this rule precludes a lawyer from advertising under a nonsense name designed to obtain an advantageous position for the lawyer in alphabetical directory listings unless the lawyer actually practices under that nonsense name. Advertising under a law firm name that differs from the firm name under which the lawyer actually practices violates both this rule and subdivision (b)(1) of rule 4-7.2.
With regard to subdivision (f), lawyers sharing office facilities, but who are not in fact partners, may not denominate themselves as, for example, “Smith and Jones,” for that title suggests partnership in the practice of law.
All lawyers who practice under trade or firm names are required to observe and comply with the requirements of the Rules Regulating The Florida Bar, including but *1147 not limited to, rules regarding conflicts of interest, imputation of conflicts, firm names and letterhead, and candor toward tribunals and third parties.
Some liability insurers employ lawyers on a full-time basis to represent their insured clients in defense of claims covered by the contract of insurance. Use of a name to identify these attorneys is permissible if there is such physical and functional separation as to constitute a separate law firm. In the absence of such separation, it would be a misrepresentation to use a name implying that a firm exists. Practicing under the name of an attorney inherently represents that the identified person has supervisory responsibility. Practicing under a name prohibited by subsection (f) is not permitted. Candor requires disclosure of the employment relationship on letterhead, business cards, and in certain other communications that are not presented to a jury. The legislature of the State of Florida has enacted, as public policy, laws prohibiting the joinder of a liability insurer in most such litigation, and Florida courts have recognized the public policy of not disclosing the existence of insurance coverage to juries. Requiring lawyers who are so employed to disclose to juries the employment relationship would negate Florida public policy. For this reason, the rule does not require the disclosure of the employment relationship on all pleadings and papers filed in court proceedings. The general duty of candor of all lawyers may be implicated in other circumstances, but does not require disclosure on all pleadings.